UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DELAUNDA DYKES**                                                                                  **CIVIL ACTION**

**VERSUS**                                                                                            **NO.** 09-5909

**JOHNSON & JOHNSON, ET AL.**                                       **SECTION "K"(4)**

### ORDER AND REASONS

Before the Court are Defendant's Motion for Summary Judgment to Dismiss All of Plaintiff's Claims with Prejudice (Doc. 25) and Defendant Ethicon, Inc.'s Alternative Motion for Summary Judgment Based on Preemption. (Doc. 26). Having reviewed the pleadings, memoranda, exhibits and the relevant law, the Court is prepared to rule.

**Background**

On August 5, 2008, Delaunda Dykes underwent a total abdominal hysterectomy and the removal of fallopian tubes and ovaries("hysterectomy") which was performed by Dr. Katherine Williams at St. Tammany Parish Hospital. Ms. Dykes had been suffering from chronic pelvic pain from chronic ovarian cysts and endometriosis. Prior to her surgery, it was determined that she was at risk for being hypercoagulable because of a strong family history of clotting issues, in particular deep vein thrombosis. (Dep. of Katherine Williams, Doc. 32-1 at 35-36). She was sent to Dr. Saux to evaluate this problem, and a blood thinner was recommended during surgery, with Lovenox, an anticoagulant, "on call during surgery", followed by a four week course of Lovenox post-surgery. (*Id.* 52, 57).

During the hysterectomy, Dr. Williams used Surgicel Fibrillar Absorbable Hemostat, manufactured by Ethicon, Inc., over the vaginal cuff to reduce the risk of bleeding and where the uterus and ovaries were, as well as wherever the pedicles were to reduce hematoma formation based on the use of Lovenox and the fact that she was bleeding. (Dep. of Williams, at 60-61). While the operation apparently went well without complications, four to five days later, Ms. Dykes began to experience severe abdominal pain and distension and severe bladder spasms with rectal and anal pain. She was readmitted to St. Tammany Parish Hospital.

On August 14, 2008 Dr. Williams performed an exploratory laparotomy and discovered that Ms. Dykes had "significant bowel adhesions around the rectosigmoid colon" with the "omentum ... adherent over this area" and it "appeared that there was an exudative substance or possibly residual fibrillar and everywhere that this substance was located, there appeared to be an intense inflammatory response." Doc. 25-2 at 7-24. This reaction apparently was akin to what a layperson would see with poison ivy; wherever the Fibrillar had touched, the area was raised, thick and inflamed. (Doc. 32-1, Dep. of Williams at 134).

Dr. Williams testified at her deposition that she believed that Ms. Dykes had a foreign body reaction to the Fibrillar. (Doc. 32-1, Dep. of Williams at 87-88, 98). The 2003 Surgicel Fibrillar Hemostat For Surgical Use information sheet that accompanied the Fibrillar used by Dr. Williams in plaintiff's surgery advised in both the Precautions and Adverse Reactions sections that a foreign body reaction to the product could occur:

> **PRECAUTIONS:**
> Use only as much SURGICEL Hemostat as is necessary for hemostasis, holding it firmly in place until bleeding stops. Remove any excess before surgical closure in order to facilitate absorption and minimize the possibility of **foreign body reaction.**
> **ADVERSE REACTIONS:**

2

Encapsulation of fluid and **foreign body reactions** have been reported. (Doc. 25-2, p. 23 of 24) (emphasis added). However, Dr. Williams testified that, prior to Plaintiff's August 5, 2008 surgery, she had never read the For Surgical Use information sheet accompanying the Fibrillar. "I had never read the package insert before the surgery." (Doc. 32-1, Dep. of Williams, 64, 83-84). At her deposition, Dr. Williams also testified that the information sheet disclosed under the Adverse Reactions and Precautions sections that "foreign body reactions" have been reported with use of the product. (Doc. 32-1, Dep. of Williams, pp. 84-85, 132). Dr. Williams also testified that she understood that there's a possibility of a foreign body reaction with any kind of product used and left in a patient during surgery. (Doc. 32-1, Dep. of Williams, pp. 13, 85).

On August 7, 2009, Delaunda Dykes filed the instant suit in the 22nd Judicial District Court for the Parish of St. Tammany which was removed to this Court on August 27, 2009. The sole allegation of liability is contained in Paragraph X thereof which states: "As a result of . . . Ethicon, Inc. manufacturing and failure to warn of the potential side effects of the product, Delaunda Dykes, suffered significant injuries to her body as a result of the use of the product. . . ." No mention of a defect in design was made. The case was set for jury trial on February 14, 2011 with a discovery cut-off of January 3, 2011 . The last day on which substantive motions could be filed was December 21, 2010 to be heard on January 5, 2011.

On September 14, 2010, the Court conducted a Status Conference to determine the parties progress and to remind them of the aforementioned cut-off dates. At that time, the Court was apprised that discovery was proceeding without problems and that is was not yet completed. Counsel were also instructed if discovery problems arose that would impact the trial date, the

Court should be notified.  Three months later, on December 12, 2010 the motion for summary judgment concerning the inadequate warning and "manufacturing" issue was filed and noticed for hearing on January 5, 2011.  On December 21, 2010 the motion for summary judgment based on preemption was filed and likewise set for January 5th.  Plaintiff's oppositions to these motion were due on December 28, 2011.  A deficient motion to continue the hearing on these was filed on December 23, 2010 without an accompanying memoranda among other things.  The deficiency was corrected on December 27, 2010 and an opposition was filed by plaintiff on December 28, 2010.  The Court denied the motion to continue based on the impending trial date of February 14, 2011.

On January 19, 2011, a status conference was held to discuss a Motion to Continue Trial filed on behalf of plaintiff Delaunda Dykes opining that more discovery was needed.  The Court having preliminarily reviewed the pending motions found that such motions had merit and in order to insure that no additional expense would be incurred by the parties, the Court continued the trial and ordered that additional discovery would not be allowed until a ruling on the instant motions occurred.

**Standard for Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a

genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010). The Court will first take up the Motion for Summary Judgment to Dismiss All of Plaintiff's Claims with Prejudice (Doc. 25)

**Motion for Summary Judgment to Dismiss All of Plaintiff's Claims (Doc. 25)**

    **Inadequate Warning–Learned Intermediary Doctrine**

The Louisiana Products Liability Act ("LPLA") provides the exclusive remedy for products liability actions against manufacturers under Louisiana law. *See* La. Rev. Stat. Ann. § 9:28000.52, *et seq*. To prevail in action brought under the LPLA, a plaintiff must demonstrate that: (1) that the defendant is a manufacturer of the product: (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. La. Rev. Stat. Ann.§ 2800.54(A); *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002). A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria:

>   (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9: 2800.55;
>
>   (2) The product is unreasonably dangerous in design as provided in R.S. 9: 2800.56;
>
>   (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
>   (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

*Id.* §9:2800.54(B).

A product is considered unreasonably dangerous because of an inadequate warning when the product in question "possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger

6

to users and handlers of the product." La. Rev. Stat. Ann. § 9:2800.57(A).; *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 205 (5th Cir. 2001). Under Louisiana law and the "learned intermediary doctrine," a drug manufacturer has discharged its duty to consumers of its prescription drugs when it has reasonably informed prescribing physicians of the dangers of harm from such a drug so that they may intelligently decide on its use and advise the patient. *Cobb v. Syntex Laboratories, Inc.*, 444 So.2d 203, 205 (La. App. 1st Cir. 1983); *Anderson v. McNeilab, Inc.,* 831F.2d 92, 93 (5th Cir. 1987). This doctrine is equally applicable to a surgical product such as the one at issue.

Thus, under the LPLA, where the learned intermediary doctrine applies, a two-prong test is applied to an inadequate-warning claims.

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician. *Willett v. Baxter Int'l Inc.,* 929 F.2d 1094, 1098 (5th Cir. 1991). Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. *Id.*

*Stahl*, 283 F.3d at 265-66. Indeed, the Fifth Circuit in *Stahl* examined the standard employed under Louisiana law as to the first prong–the adequacy of the warning in the context of summary judgment. The appellate court stated:

> For summary adjudication of an inadequate warning claim to be appropriate, the plaintiff's prescribing physician must also unequivocally testify that the warning was adequate to inform him or her of the risks involved in prescribing the drug. The doctor's testimony provides added assurance that the language in the package insert was worded strongly enough to adequately inform him or her of the actual level of risk involved.

*Id.* at 267. In the case at bar, the package insert as noted provided precautions–removal of excess before closure– to minimize the possibility of foreign body reaction. Also noted was the

fact that the adverse reaction of encapsulation of fluid and foreign body reactions had been reported. During her deposition, Dr. Williams, the treating physician, acknowledged that starting with medical school, she was aware that there is a possibility of foreign body reaction with any kind of device that is implanted or used in surgery. (Dep. Williams at 13). Also, after being read the precaution and adverse reaction warnings noted above, Dr. Williams was asked, "Certainly the package insert does indicate a warning of foreign body reactions, right?" She responded, "Right, yeah." (Williams Dep. at 84-85). This testimony would indicate sufficiency. Coupled with the failure to present expert testimony concerning the alleged inadequacy of such a warning, this first prong is not satisfied. *Hall v. Sinn, Inc.*, 2004 1418787, *3 (5th Cir. June 22, 2004).[1]

     Moreover, plaintiff cannot prove the second prong–that is that this alleged failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. Dr. Williams never read the warning, and thus the warning played no role in the events leading to plaintiff's injury. As reasoned in *Hall*, even if the Court were to assume, *arguendo*, that the warning was inadequate, plaintiff would be unable to show that a proper warning would have changed her doctor's decision–she never read it. *Id. See Pustejovsky v. Pliva, Inc.*, 623 F.3d 271 (5th cir. 2010) (where treating physician had no memory of reading package insert and plaintiff provided only speculative "evidence" with respect to possible warning discussions at continuing

---

[1] The Court would note that Dr. Williams testified that after the incident, she found two other instances at St. Tammany Hospital where two doctors had similar experiences with post operative pain for their respective patients. As a result, Dr. Williams averred that she no longer uses this material. She was never asked directly whether the warning would have been adequate to inform her. It should also be noted that this type of product has been in use for over 50 years.

education seminars, plaintiff could not demonstrate that manufacturer's warning was the producing cause of injury; the learned-intermediary doctrine barred recovery).

### Design and Construction and Composition Claims

In plaintiff's opposition to this motion, Counsel states, "Ms. Dykes contends that the product is defective because of the inadequate warning provided by Ethicon, Inc. and additionally is defective in its design and in its construction and composition." To begin, as noted above, there was no "design" claim alleged in the petition. The sole indication of a claim based on anything other than the alleged inadequate warning was for the "manufacturing" of the product which apparently plaintiff contends constitutes a claim for the product being "unreasonably dangerous in construction or composition" as provided in La. Rev. Stat. Ann. 9: 2800.55.

Plaintiff presents no expert testimony or any other competent evidence to support these other claim. Instead, plaintiff opines that there was inadequate time for discovery. This case was filed on August 7, 2009 and removed to this Court on August 27, 2009. A scheduling order was entered on March 18, 2010 for discovery to proceed up to and including January 3, 2011, a period of over nine months. When the Court conducted its status conference six months later in September, the Court noted in its order that discovery was proceeding without problems and further informed the parties to notify the Court should any discovery problems arise that would impact the trial date. (Doc. 18).

The Court was never contacted concerning any problems; the first indication of a "problem" which in reality was plaintiff's utter failure to participate in discovery, was the aforementioned motion to continue which was denied. Indeed, according to defendant, plaintiff

9

failed to propound discovery until after Ethicon's first summary judgment motion was filed (Doc. 33-2 at 6 of 7), and apparently plaintiff did not notice a single deposition. At the status conference in September, the Court explained with particularity the Court's procedures and insistence on meeting scheduling deadlines. The fact that the motion to continue was denied should not have come as any surprise to plaintiff; counsel will not be rewarded for such dilatory trial preparation with a fishing expedition at this juncture.

To prove a product is "unreasonably dangerous" within the meaning of the LPLA, plaintiff must submit expert testimony because the composition, design, testing, and product characteristics of a medical product "require sophisticated knowledge on topics such as biochemistry which are outside the average person's common understanding. *Sheridan v. Merck& Co., Inc.*, 2003 WL 22902622, *2 (E.D.La. Dec. 8, 2003). As there is no competent expert testimony adduced to support these other claims of design and construction and composition, such claims fail as a matter of law. Accordingly,

**IT IS ORDERED** that Motion for Summary Judgment to Dismiss All of Plaintiff's Claims with Prejudice is **GRANTED**.

**Ethicon, Inc.'s Alternative Motion for Summary Judgment Based on Preemption (Doc. 26)**

As to the alternative Motion for Summary Judgment Based on Preemption, defendant states that in the event the Court were to grant the first filed motion, this second motion is moot and need not be heard. (Doc. 26 at 1). Having granted all relief sought in the first motion,

**IT IS ORDERED** that Ethicon, Inc.'s Alternative Motion for Summary Judgment Based on Preemption (Doc. 26) is **MOOT.**

**IT IS FURTHER ORDERED** that judgment be entered in favor of defendant Ethicon, Inc. and against plaintiff Delaunda Dykes dismissing all claims with prejudice with each party to bear her/its own costs.

New Orleans, Louisiana, this 20th day of May, 2011.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**